No. 22-1231

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Plaintiff-Appellant,

v.

CHARTER COMMUNICATIONS, LLC,
Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Eastern District of Wisconsin
No. 18-cv-1333

_____

**REPLY BRIEF FOR PLAINTIFF-APPELLANT
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

_____

GWENDOLYN YOUNG REAMS
*Acting General Counsel*

JENNIFER S. GOLDSTEIN
*Associate General Counsel*

ANNE NOEL OCCHIALINO
*Acting Assistant General Counsel*

CHELSEA C. SHARON
*Attorney, Appellate Litigation Services*
*Office of General Counsel*
*Equal Employment Opportunity Commission*
*131 M St. NE, Fifth Floor*
*Washington, DC 20507*
*(202) 921-2889*
*chelsea.sharon@eeoc.gov*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................ii

INTRODUCTION ..............................................................................................1

ARGUMENT ....................................................................................................1

    I.       A reasonable jury could conclude that Kimmons had a disability. .................1

    II.     Charter is incorrect that Kimmons had no entitlement to an accommodation as a matter of law. ................................................................................7

         A.     Kimmons' accommodation was neither irrelevant to essential job functions under *Brumfield* nor outside the ADA's purview................7

         B.     Charter fails to explain why this Court should not revisit *Brumfield* pursuant to Circuit Rule 40(e)................................................13

    III.    Kimmons' requested accommodations were not unreasonable as a matter of law. ......................................................................................18

         A.     Commute-related accommodations are not categorically unreasonable. ..............................................................18

         B.     A jury could find Kimmons' shift-change request reasonable.........18

         C.     Transfer was not unreasonable as a matter of law..........................20

CONCLUSION..................................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Crestwood Med. Ctr.*,
   504 F. Supp. 3d 1263 (N.D. Ala. 2020) ............................................................................16

*Bay v. Cassens Transp. Co.*,
   212 F.3d 969 (7th Cir. 2000) ............................................................................................16

*Bell v. O'Reilly Auto Enters., LLC*,
   972 F.3d 21 (1st Cir. 2020) ..............................................................................................16

*Brumfield v. City of Chi.*,
   735 F.3d 619 (7th Cir. 2013) ..........................................................................................1, 7

*Bultemeyer v. Fort Wayne Cmty. Schs.*,
   100 F.3d 1281 (7th Cir. 1996) ..........................................................................................16

*Capobianco v. City of New York*,
   422 F.3d 47 (2d Cir. 2005) ..............................................................................................3, 4

*Cloe v. City of Indianapolis*,
   712 F.3d 1171 (7th Cir. 2013) ..........................................................................................10

*Coghill v. Bd. of Educ.*,
   No. GJH-14-2767, 2017 WL 1049470 (D. Md. Mar. 17, 2017) ........................................6

*Colwell v. Rite Aid Corp.*,
   602 F.3d 495 (3d Cir. 2010) ..................................................................................3, 8, 9, 11

*D'Onofrio v. Costco Wholesale Corp.*,
   964 F.3d 1014 (11th Cir. 2020) ........................................................................................16

*EEOC v. Sears, Roebuck & Co.*,
   417 F.3d 789 (7th Cir. 2005) ............................................................................................10

*EEOC v. United Airlines, Inc.*,
   693 F.3d 760 (7th Cir. 2012) ............................................................................................20

*EEOC v. Wal-Mart Stores, Inc.*,
   --F.4th--, 2022 WL 2353026 (7th Cir. 2022) ..................................................................18

*Fedro v. Reno*,
   21 F.3d 1391 (7th Cir. 1994) ............................................................................................15

*Feist v. La. Dep't of Just.*,
    730 F.3d 450 (5th Cir. 2013) ...........................................................................17

*Felix v. Key Largo Mgmt. Corp.*,
    No. 21-10381, 2021 WL 5037570 (11th Cir. Oct. 29, 2021) ...........................3, 5

*Filar v. Bd. of Educ.*,
    526 F.3d 1054 (7th Cir. 2008) ................................................................. 10, 15, 17

*Filar v. Chi. Sch. Reform Bd. of Trs.*,
    No. 04 C 4679, 2007 WL 79290 (N.D. Ill. Jan. 5, 2007) ...................................10

*Fuller v. Belleville Area Cmty. Coll. Dist. No. 522*,
    No. 3:18-cv-01123-GCS, 2020 WL 1287743 (S.D. Ill. Mar. 18, 2020) ...........10

*Gile v. United Airlines, Inc.*,
    95 F.3d 492 (7th Cir. 1996) .............................................................................13

*Gile v. United Airlines, Inc.*,
    213 F.3d 365 (7th Cir. 2000) ............................................................................20

*Green v. United Parcel Serv., Inc.*,
    847 F. App'x 207 (5th Cir. 2021) .........................................................................6

*Haschmann v. Time Warner Ent. Co.*,
    151 F.3d 591 (7th Cir. 1998) ...............................................................................9

*Hazelett v. Wal-Mart Stores, Inc.*,
    829 F. App'x 197 (9th Cir. 2020) ........................................................................11

*Hendon v. Wis. Bell, Inc.*,
    No. 16-C-0941, 2018 WL 1885678 (E.D. Wis. Apr. 19, 2018) ..........................10

*Hill v. Assocs. for Renewal in Educ., Inc.*,
    897 F.3d 232 (D.C. Cir. 2018) ............................................................................16

*Johnson v. Bd. of Trs.*,
    666 F.3d 561 (9th Cir. 2011) ...............................................................................16

*Kauffman v. Petersen Health Care VII, LLC*,
    769 F.3d 958 (7th Cir. 2014) ...............................................................................19

*King v. Steward Trumbull Mem'l Hosp. Inc.*,
    30 F.4th 551 (6th Cir. 2022) ...............................................................................19

*Livingston v. Fred Meyer Stores, Inc.*,
    388 F. App'x 738 (9th Cir. 2010) ...........................................................3, 5, 11, 19

*Livingston v. Fred Meyer Stores, Inc.*,
567 F. Supp. 2d 1265 (D. Or. 2008) ....................................................... 5

*Lucas v. W.W. Grainger, Inc.*,
257 F.3d 1249 (11th Cir. 2001) ............................................................ 16

*Lyons v. Legal Aid Soc'y*,
68 F.3d 1512 (2d Cir. 1995) ............................................................... 8, 11

*Majors v. Gen. Elec. Co.*,
714 F.3d 527 (7th Cir. 2013) ............................................................... 12

*McAllister v. Innovation Ventures, LLC*,
983 F.3d 963 (7th Cir. 2020) ............................................................... 18

*McWright v. Alexander*,
982 F.2d 222 (7th Cir. 1992) ............................................................... 15

*Morrissey v. Laurel Health Care Co.*,
946 F.3d 292 (6th Cir. 2019) ............................................................... 6

*Owens v. United States*,
387 F.3d 607 (7th Cir. 2004) ............................................................... 17

*Ramos v. Toperbee Corp.*,
241 F. Supp. 3d 305 (D.P.R. 2017) ...................................................... 6

*Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*,
319 F.3d 891 (7th Cir. 2003) ......................................................... 15, 18

*Ravel v. Hewlett-Packard Enter., Inc.*,
228 F. Supp. 3d 1086 (E.D. Cal. 2017) ................................................ 11

*Regan v. Faurecia Auto. Seating, Inc.*,
679 F.3d 475 (6th Cir. 2012) ............................................................... 11

*Richardson v. Chi. Transit Auth.*
926 F.3d 881 (7th Cir. 2019) ............................................................ 1, 2

*Robinson v. Bodman*,
333 F. App'x 205 (9th Cir. 2009) ........................................................ 11

*Sanchez v. Vilsack*,
695 F.3d 1174 (10th Cir. 2012) ............................................................ 2

*Schluter v. Indus. Coils, Inc.*,
928 F. Supp. 1437 (W.D. Wis. 1996) ................................................... 6

*Shields v. Credit One Bank, N.A.,*
   32 F.4th 1218 (9th Cir. 2022) ........................................................................5

*Stewart v. Cnty. of Brown,*
   86 F.3d 107 (7th Cir. 1996) ..........................................................................19

*Stokes v. Bd. of Educ.,*
   599 F.3d 617 (7th Cir. 2010) ..........................................................................4

*United States v. Ritz,*
   721 F.3d 825 (7th Cir. 2013) ........................................................................13

*Unrein v. PHC-Fort Morgan, Inc.,*
   993 F.3d 873 (10th Cir. 2021) ......................................................................11

*US Airways, Inc. v. Barnett,*
   535 U.S. 391 (2002) ......................................................................................20

*Watson v. Lithonia Lighting,*
   304 F.3d 749 (7th Cir. 2002) ........................................................................16

*Whitaker v. Wis. Dep't of Health Servs.,*
   849 F.3d 681 (7th Cir. 2017) ........................................................................16

*Yochim v. Carson,*
   935 F.3d 586 (7th Cir. 2019) ........................................................................10

*Zaffino v. Metro. Gov't of Nashville,*
   688 F. App'x 356 (6th Cir. 2017) ..................................................................11

## Statutes

Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ...........................*passim*

   42 U.S.C. § 12102(4) ................................................................................ 1, 2, 5

   42 U.S.C. § 12111(8) ......................................................................................15

   42 U.S.C. § 12111(9)(A) ........................................................................... 17, 18

   42 U.S.C. § 12111(9)(B) ..................................................................................9

   42 U.S.C. § 12112(b)(5)(A) ............................................................................13

## Regulations

29 C.F.R. § 1630.2(j)(1) ....................................................................................2

29 C.F.R. § 1630.2(o)(1) .................................................................................................. 15

**Other Authorities**

29 C.F.R. pt. 1630, app. § 1630.2(j)(1)(viii) ............................................................... 5

29 C.F.R. pt. 1630, app. § 1630.2(o) ........................................................................... 17

29 C.F.R. pt. 1630, app. § 1630.9 ........................................................................... 10, 14

EEOC Informal Discussion Letter, ADA: Reasonable Accommodation (6/20/01),
https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-47 (last visited July
6, 2022) ............................................................................................................................ 10

H.R. Rep. No. 101-485, pt. 2 (1990), *reprinted in*
1990 U.S.C.C.A.N. 330 .............................................................................................. 14

101 Cong. Rec. S933 (daily ed. Aug. 1, 1989) (statement of Sen. D'Amato) ........... 9

## INTRODUCTION

Focusing on the ground on which the district court granted summary judgment—rather than the grounds on which it did not—EEOC's opening brief argued that the district court erred by relying on *Brumfield v. City of Chicago*, 735 F.3d 619 (7th Cir. 2013), to hold that Charter had no duty to reasonably accommodate Kimmons' disability. As EEOC explained, Kimmons' cataract-related night blindness was relevant to his essential job functions under *Brumfield* because it interfered with his ability to travel safely to the workplace.

In response, Charter does little to contest that an accommodation needed to safely access the workplace is relevant to essential job functions, instead relying on the disputed factual claim— inappropriate for resolution at summary judgment—that Kimmons' accommodation request was motivated by personal preference rather than disability. And Charter advances two separate arguments never addressed by the district court: that Kimmons was not disabled, and that his requested accommodations were unreasonable. Because these arguments lack merit, this Court should decline to affirm on these alternative bases.

## ARGUMENT

### I.     A reasonable jury could conclude that Kimmons had a disability.

The district court assumed correctly that Kimmons' "night blindness could constitute a disability under the ADA." R.60 at 4 (A-4). Charter's contrary argument rests on misstating the permissive disability standard under the ADA Amendments Act of 2008 (ADAAA), mischaracterizing record evidence, and inviting this Court to resolve disputed factual issues at summary judgment.

Congress passed the ADAAA "to ensure that the ADA's 'definition of disability . . . be construed in favor of broad coverage.'" *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 888 (7th Cir. 2019) (quoting 42 U.S.C. § 12102(4)(A)). The ADAAA abrogated Supreme Court decisions that had

"created an inappropriately high level of limitation necessary to obtain coverage." *Richardson*, 926 F.3d at 888 (citation omitted). In doing so, "Congress emphasized that the primary object of attention . . . should be whether [employers] . . . have complied with their obligations," not whether the impairment is a disability. *Id.* (internal quotation marks and citation omitted).

After the ADAAA, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii); *see* 42 U.S.C. § 12102(4)(B) ("substantially limits" must be interpreted consistent with ADAAA's purposes). Rather, the relevant question is whether the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

Charter does not appear to dispute that cataracts are an impairment, or that Kimmons was diagnosed with cataracts, but instead contends that *as a matter of law* Kimmons' impairment was not substantially limiting. Charter Br. 22-29. The record shows otherwise. A jury could reasonably find that Kimmons' cataracts substantially limited his vision as compared to most people in the general population by causing blurred vision, diminished visual acuity, and difficulty with glare, particularly in the dark. R.30-55 at 75:8-23. Kimmons explained that, with glare, "everything is just . . . opaque like. . . . [Y]ou don't see objects. You just get a glare." R.30-5 at 46:7-10. Optometrist Bruce Savin confirmed that cataracts cause such symptoms because the eye's lens "develop[s] opacities . . . . It can be a yellowish hazing called sclerosis, but also can be in the form of . . . spokes, sheets or dots even. It's like throwing debris against a window in your house. If you have enough of that block the window, you can't see anymore." R.30-55 at 38:16-23. A jury could easily find that most people in the general population do not experience such symptoms. *See* 29 C.F.R. § 1630.2(j)(1)(v) (no need for "scientific, medical, or statistical analysis" when comparing to general population); *Sanchez v. Vilsack*, 695 F.3d 1174, 1179 (10th Cir. 2012) (jury could find plaintiff's sight substantially limited

where her vision field was "limited in comparison to the average person"); *Capobianco v. City of New York*, 422 F.3d 47, 58 (2d Cir. 2005) (jury could find plaintiff's sight substantially limited where he required more light to see than average person).

Further "probative of [Kimmons'] limited ability to see" is that his cataracts caused an "inability to drive at night." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010). Dr. Savin explained that cataracts cause "diminished visual acuity" and blurriness that "typically bothers a patient more in the dark and that's typically night driving." R.30-55 at 75:10-14. He further stated that glare—for example from headlights—exacerbates cataracts because "[l]ight rays are being reflected off of those particles or areas of debris in the lens of the eye. The opacities … will cause the light to scatter and reflect." R.30-55 at 75:19-23. Kimmons testified this was exactly his experience: "You get a glaring . . . of oncoming traffic lights and . . . lights that are on the freeway or the streets." R.30-5 at 30:10-14. To address these issues, Dr. Savin recommended that Kimmons "consider avoiding night driving." R.30-59 at 4; *see* R.30-57 at 5 (Kimmons "cautioned about glare"). Kimmons confirmed he followed this recommendation. R.30-5 at 64:23-65:1 (avoided night driving at Charter); R.30-5 at 68:20-23 (same); R.30-5 at 116:7-15 (avoided evening social events due to inability to drive in dark).

Contrary to Charter's suggestion, "[a] jury could surely find that the average person in the general population can drive at night." *Capobianco*, 422 F.3d at 58 (internal quotation marks and citation omitted); *Livingston v. Fred Meyer Stores, Inc.*, 388 F. App'x 738, 740 (9th Cir. 2010) ("[A]n average person could safely drive . . . at night . . . ."); *cf.* Charter Br. 27 (suggesting that most individuals over age forty-five cannot drive at night). Indeed, courts have routinely found a triable fact issue as to substantial limitations in seeing where plaintiffs described difficulties with night driving. *See Colwell*, 602 F.3d at 502; *Capobianco*, 422 F.3d at 58-59; *Felix v. Key Largo Mgmt. Corp.*, No. 21-10381, 2021 WL 5037570, at *3 (11th Cir. Oct. 29, 2021); *Livingston*, 388 F. App'x at 740.

3

Charter attempts to distinguish these cases by asserting that Kimmons—unlike those plaintiffs—did not actually have any difficulty with night driving. Charter Br. 25-29. But whether Kimmons had difficulty driving at night is a disputed factual question inappropriate for resolution at summary judgment. Dr. Savin testified that cataracts cause problems with glare and recommended Kimmons avoid night driving for this reason. R.30-55 at 75:19-23; R.30-59 at 4. Kimmons testified that he followed Dr. Savin's recommendation. R.30-5 at 64:23-65:1, 68:20-23, 116:7-15. Charter points to witnesses who expressed their "understanding" or "assumption" that Kimmons drove in the dark, R.30-33 ¶ 5; R.37 ¶ 117; R.49 ¶ 45; Charter Br. 25, but any conflict between that testimony and Kimmons' is for a jury to resolve.[1] *Stokes v. Bd. of Educ.*, 599 F.3d 617, 619 (7th Cir. 2010) (court may not assess witness credibility "or "balance the relative weight of conflicting evidence" at summary judgment).

Charter attempts to avoid this conclusion by claiming that Kimmons only testified he could not "recall" whether he avoids night driving. Charter Br. 25-26. But Kimmons did not testify that he could not recall whether he avoided night driving as a *general matter*; instead, he testified that he could not recall whether he had *ever* on *any occasion* had to drive at night in the last five years. *Compare* R.30-5 at 19:6-7 ("I didn't drive at night. I simply didn't do it."), *with* R.30-5 at 46:15-19 (Q: "But you've *never* at all in the last five years driven at night?" A: "I don't recall at this time. But I don't—I don't do it.") (emphasis added). The mere fact that Kimmons could not disallow the possibility that he had *ever* in five years driven at night does not prevent a jury from concluding that he avoided night driving as a general matter. Moreover, even if Kimmons occasionally drove at night, this would not preclude a substantial limitation finding. *See Capobianco,* 422 F.3d at 58 (plaintiff could drive at night

---

[1] Charter argues that Kimmons' testimony that he relied on public transportation and rides from his girlfriend and friends is "belied by the undisputed fact[]" that no evening public transportation existed between Racine and Milwaukee. Charter Br. 25-26 n.9. But Kimmons testified that he frequently stayed with his girlfriend in *Milwaukee* and used the Milwaukee bus system, rather than taking public transportation to *Racine*. R.30-5 at 52:10-16, 67:8-16, 149:15-20.

in certain situations); *Livingston*, 388 F. App'x at 740 (reversing district court decision that relied on plaintiff's occasional night driving to find no disability, *see* 567 F. Supp. 2d 1265, 1271 (D. Or. 2008)).

Charter next argues that "[e]ven assuming Kimmons avoids driving in darkness, no reasonable jury could find his vision is substantially limited" because he could perform *other* life activities like walking, reading, watching television, attending social events, and working at Charter. Charter Br. 25-27. This argument mischaracterizes the record. *See* R.30-5 at 31:5-15, 116:1-117:7 (Kimmons' testimony that night blindness interfered with ability to walk at night, attend social events, and pursue certain job opportunities); R.30-68 at 64:20-65:17 (Davis' testimony that she primarily socialized with Kimmons *during the day*). More importantly, the ADAAA's clear statement that "[a]n impairment that substantially limits one major life activity need *not* limit other major life activities in order to be considered a disability" forecloses this argument. 42 U.S.C. § 12102(4)(C) (emphasis added); *see Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1223 (9th Cir. 2022) (ADAAA "reject[ed]" the notion that an impairment must "restrict[] the individual from doing activities that are of central importance to most people's daily lives" (citation omitted)). Thus, only Kimmons' *vision itself* need be substantially limited; he "need not also show that he is unable to perform activities of central importance to daily life that require seeing." 29 C.F.R. pt. 1630, app. § 1630.2(j)(1)(viii); *see Felix*, 2021 WL 5037570, at *3 (jury could find plaintiff disabled where he could "see to work but not to drive at night").

Charter argues that Kimmons' alleged lack of "other limitations on his ability to see" beyond night driving aligns with vision-impairment cases finding no disability. Charter Br. 27. But each of these out-of-circuit decisions either embraces the outdated proposition that an impairment must

limit other daily activities or improperly requires a *severe* or *significant* limitation.[2] For example, in *Green v. United Parcel Service, Inc.*, 847 F. App'x 207 (5th Cir. 2021), the Fifth Circuit's unpublished decision finding no disability relied heavily on a pre-ADAAA case holding that "a plaintiff's partial blindness did not qualify as a disability because he was still able to perform normal daily activities." *Id.* at 211 (internal quotation marks and citation omitted). And in *Coghill v. Board of Education*, No. GJH-14-2767, 2017 WL 1049470 (D. Md. Mar. 17, 2017), *aff'd*, 703 F. App'x 211 (4th Cir. 2017), the court relied largely on pre-ADAAA cases finding no disability where plaintiffs had "no problem caring for [themselves] or engaging in other major life activities." *Id.* at *6 (citation omitted). Charter's remaining cases are equally problematic. *See Ramos v. Toperbee Corp.*, 241 F. Supp. 3d 305, 327-29 (D.P.R. 2017) (relying on pre-ADAAA case law and finding no disability because plaintiff's "impairment does not *severely* restrict" her sight (emphasis added)); *Schluter v. Indus. Coils, Inc.*, 928 F. Supp. 1437, 1444 (W.D. Wis. 1996) (requiring "'significant' restriction on a major life activity" (citation omitted)). Charter's attempt to distinguish the cases on which EEOC relies by claiming that plaintiffs there had greater restrictions in their daily life activities, Charter Br. 28-29, equally fails because current law requires no such restrictions.

Charter also mischaracterizes the medical evidence in an effort to downplay Kimmons' visual impairment. For example, Charter describes Kimmons' cataracts as "early" and "mild" and his glasses prescription as "average" and claims that Dr. Savin only recommended surgery if Kimmons' cataracts worsened. Charter Br. 24. But Dr. Savin explained that even "beginning" or "mild" cataracts can "cause . . . patients tremendous problem[s]." R.30-55 at 81:11-14. The more important indicator of severity, he said, was whether the cataracts were central to the line of sight, and

---

[2] Citing an out-of-circuit district court case, Charter asserts that "[c]ourts have continued to rely on pre-ADAAA cases in analyzing whether an impairment constitutes a disability." Charter Br. 22-23 n.8. But such cases are no longer "good law in . . . determining" disability. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019).

Kimmons' were. R.30-55 at 39:13-22. And Dr. Savin testified that he *did* recommend Kimmons as a candidate for cataract surgery based on his "bad vision" (20/30 in one eye) that could not be further corrected absent surgery. R.30-55 at 39:23-40:18; *see* R.30-5 at 88:6-23, 105:9-21 (Kimmons' testimony that he eventually underwent cataract surgery after delaying for another eye procedure). Charter also claims that Dr. Savin only recommended avoiding night driving to "address[ ] [Kimmons's] complaint." Charter Br. 8. But that is logical: Kimmons' complaint concerned difficulty with glare, and avoiding night driving was how Dr. Savin believed this complaint could best be addressed, absent surgery. R.30-55 at 41:8-14 ("I noted that if the patient does not proceed with cataract surgery—because his complaint revolved around driving at night, I made the notation 'Consider avoiding night driving.' Because all we could do would be the 20/30 and 20/25."). Because a reasonable jury could find that Kimmons' cataracts substantially limited his sight as compared to most people in the general population, summary judgment is inappropriate regarding Kimmons' disability.

## II. Charter is incorrect that Kimmons had no entitlement to an accommodation as a matter of law.

### A. Kimmons' accommodation was neither irrelevant to essential job functions under *Brumfield* nor outside the ADA's purview.

EEOC argued that Kimmons' night blindness was not "irrelevant to [his] . . . ability to perform the essential functions of [his] job" under *Brumfield*, 735 F.3d at 632, because his condition interfered with his ability to get to and from the very location where Charter required him to perform his job duties. EEOC Br. 12-22. Many courts have recognized that the ability to get to and from the workplace—where, as here, the employee cannot perform the work remotely—is an essential prerequisite to performing essential job functions. EEOC Br. 15-20. Indeed, decisions of this and other courts make clear that the ADA requires accommodations necessary for disabled

employees to access the workplace, even where they can perform all essential job functions without accommodation once at work. EEOC Br. 15-20.

Charter does not appear to dispute the straightforward proposition that getting to and from the workplace is a necessary prerequisite to performing essential job functions. Instead, Charter argues that Kimmons had no need for an accommodation because he satisfied this prerequisite, as "he had no issues being physically present and able to work even when required to commute to/from work in darkness." Charter Br. 18; *id.* 30. To the extent this argument rests on the fact that Kimmons ultimately managed to get to and from work despite his disability-related limitations, this argument is unavailing. As EEOC explained, EEOC Br. 21-22, that a disabled employee finds a way to access the workplace without an accommodation does not relieve the employer of its ADA obligations; otherwise, the employee who uses a wheelchair but manages to drag herself up the steps to her office door would not be entitled to a ramp. *See Colwell*, 602 F.3d at 499, 505-06 (plaintiff could be entitled to accommodation where she "did not miss a day of work" but asserted "hardship" from relying on family for transportation); *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1514, 1517 (2d Cir. 1995) (plaintiff stated failure-to-accommodate claim where she attended work without accommodation by paying for her own parking space). Charter does not grapple with this core proposition, instead dismissing *Colwell* and *Lyons* as outliers without any attempt to distinguish them. Charter Br. 38 n.12.

To the extent Charter's argument instead rests on a claim that Kimmons' disability had *no impact* on his ability to reach the workplace, this constitutes a disputed fact issue inappropriate for resolution at summary judgment. *Supra* at 4. Much of Charter's response rests on this disputed factual proposition. For example, Charter argues that workplace access cases are inapposite because there "the disability *itself* inhibited" access. Charter Br. 34-35. But the same is true in Kimmons' case,

as Dr. Savin and Kimmons testified that cataracts interfere with driving to and from work in the dark. *Supra* at 3-4.

Ultimately, Charter does not dispute that *some* accommodations needed to facilitate safe access to the workplace are relevant to essential job functions under *Brumfield*, but it seeks to distinguish between physical barriers within the workplace and "employee-created issues outside the workplace." Charter Br. 37. Even the district court rejected this, acknowledging that the ADA may in some situations require an employer to accommodate an employee's commute, which is an outside-the-workplace accommodation. R.60 at 6 (A-6). And Charter fails to explain why Kimmons' request for a shift change falls "outside the workplace." Charter Br. 37. Shift scheduling "is not done outside the workplace but inside the workplace" and is "clearly a change in a workplace condition entirely under the employer's control." *Colwell*, 602 F.3d at 506; *see* 42 U.S.C. § 12111(9)(B) (reasonable accommodations may include "modified work schedules").

Moreover, the ADA's text and legislative history make clear that the statute contemplates accommodations addressing barriers *outside* the workplace, such as disability-related difficulties getting to work. EEOC Br. 14-15; *see also* 101 Cong. Rec. S933 (daily ed. Aug. 1, 1989) (statement of Sen. D'Amato) ("Activities accomplished with ease by most—communicating, *commuting*, or entering the workplace—are often significant hurdles for those with disabilities. This legislation . . . will break down these barriers once and for all." (emphasis added)). Indeed, other accommodations—such as medical leave—occur outside the workplace yet are routinely deemed reasonable. *See, e.g.*, *Haschmann v. Time Warner Ent. Co.*, 151 F.3d 591, 601 (7th Cir. 1998).

Nor has EEOC suggested that commute-related accommodations fall outside the ADA. *Cf.* Charter Br. 37. The EEOC decision letter Charter cites confirms that "there are certain types of reasonable accommodations that an employer might have to provide to address workplace barriers connected with commuting problems. For example, an employee who uses a wheelchair and who

takes public transportation to get to work may need an adjustment to his/her working hours if transportation is limited . . . ." EEOC Informal Discussion Letter, ADA: Reasonable Accommodation (6/20/01), https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-47 (last visited July 6, 2022). And, contrary to Charter's interpretation, Charter Br. 30, the term "workplace barrier" in EEOC's interpretive guidance extends beyond "physical or structural obstacles" to encompass "rigid work schedules" or other "inflexible job procedures" that pose "barriers to . . . equal employment opportunity." 29 C.F.R. pt. 1630, app. § 1630.9.

This Court's precedent also rejects any per se bar on accommodations addressing barriers outside the workplace, instead analyzing such accommodations on a case-by-case basis to determine their reasonableness. *See Yochim v. Carson*, 935 F.3d 586, 591-92 (7th Cir. 2019); *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176-79 (7th Cir. 2013), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 712 F.3d 1171 (7th Cir. 2016); *Filar v. Bd. of Educ.*, 526 F.3d 1054, 1066-67 (7th Cir. 2008);[3] *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 802-03 (7th Cir. 2005); *see also Fuller v. Belleville Area Cmty. Coll. Dist. No. 522*, No. 3:18-cv-01123-GCS, 2020 WL 1287743, at *6-7 (S.D. Ill. Mar. 18, 2020); *Hendon v. Wis. Bell, Inc.*, No. 16-C-0941, 2018 WL 1885678, at *3 (E.D. Wis. Apr. 19, 2018).[4] Thus, the district court correctly read this Court's precedent as foreclosing Charter's claim that the ADA never "compel[s] an employer to accommodate an employee's commute." R.60 at 6 (A-6). Decisions of other circuits are in accord, rejecting the notion that the ADA "strictly limit[s] the breadth of reasonable accommodations to address only those problems that an employee has in

---

[3] The district court in *Filar* rejected the accommodation as a matter of law because "activities that fall outside the scope of employment, such as commuting" are "outside the responsibility of an employer under the ADA." No. 04 C 4679, 2007 WL 79290, at *6 (N.D. Ill. Jan. 5, 2007). This Court rejected that categorical approach by instead considering the reasonableness of the accommodation. 526 F.3d at 1067.

[4] Charter claims that an "overwhelming number" of district courts in this Circuit have "held that commute-related accommodations are outside the ADA's purview," Charter Br. 39, but all these decisions pre-date *Yochim* and most pre-date *Filar*.

performing her work that arise once she arrives at the workplace." *Colwell*, 602 F.3d at 505; *see also Lyons*, 68 F.3d at 1516-17; *Livingston*, 388 F. App'x at 740.

Charter claims that "the current trend has gone against" these decisions. Charter Br. 37-38 & n.12. But the four decisions Charter cites do not amount to a contrary trend. First, *Robinson v. Bodman*, 333 F. App'x 205 (9th Cir. 2009), is an unpublished decision that predates *Livingston*, and the clear trend in the Ninth Circuit is to follow *Livingston*. *See Hazelett v. Wal-Mart Stores, Inc.*, 829 F. App'x 197, 202 (9th Cir. 2020) (reversing district court's rejection of commute-related accommodation based on *Robinson*); *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1093-94 (E.D. Cal. 2017) (following *Livingston*). Second, the two Sixth Circuit decisions are distinguishable. In *Regan v. Faurecia Automotive Seating, Inc.*, 679 F.3d 475 (6th Cir. 2012), the court's rejection of the specific commute-related accommodation rested partly on the particular "facts present" there, where the employee failed to "present evidence or argument" to "support[] her theory" that her requested accommodation would in fact "provide a commute with lighter traffic." *Id.* at 480. And the unpublished *Zaffino v. Metropolitan Government of Nashville*, 688 F. App'x 356 (6th Cir. 2017), is distinguishable because the accommodation concerned not plaintiff's ability to get to the workplace but instead her purely personal preference to "be close to her doctors and avoid the stress of transferring." *Id.* at 358. Finally, the Tenth Circuit's rejection of the commute-related accommodation in *Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873 (10th Cir. 2021), rested partly on the fact that plaintiff's request for an unpredictable schedule would have "relieved [her] from an essential function of her position" and was thus "unreasonable . . . as a matter of law" for independent reasons. *Id.* at 878.

Charter next emphasizes that employers should have no obligation to accommodate "employee-created" issues. Charter Br. 30, 37. But any factual argument that Kimmons "created" his commuting issues by manufacturing a disability to get the "daytime working hours he . . . preferred,"

Charter Br. 31, would be inappropriate for resolution at summary judgment. And, to the extent Charter instead suggests that even employees who indisputably experience disability-related difficulties getting to work have "created" their own problem based on their choice of where to live, this argument is untenable. Charter appears to argue that—unlike non-disabled employees who can choose where to live based on cost, family, or personal preference—disabled employees must instead seek to "unilaterally resolve" the consequences of their disability by living as close to the workplace as possible. Charter Br. 19. But this proposition finds no support in the case law cited above; the plaintiffs in cases like *Filar*, *Colwell*, and *Lyons* presumably could have mitigated their commute-related problems by moving closer to the workplace, but none of these decisions even hinted that they had any obligation to do so.

Charter's "employee-created issues" framework is as unclear as it is unworkable. If Kimmons had relocated from Racine to Milwaukee but still lived ten miles away and could not safely drive that distance in the dark, would he then be entitled to an accommodation? Or only if he moved within five miles? Or a block away? If Kimmons moved to Milwaukee but Charter then transferred him to a different worksite thirty miles away, would he be entitled to an accommodation because the commute-related issue arose not from "his own personal choices," Charter Br. 31, but instead from Charter's choice to transfer him? Charter does not say.

Nor is Charter's concern about "unfettered abuse" persuasive. Charter Br. 35. The parade of horribles that Charter invokes are all premised on the concern that employees will "routinely manufacture commute-related 'attendance' issues." Charter Br. 36. But the ADA already guards against this concern by requiring employees to establish a qualifying disability that necessitates an accommodation. EEOC Br. 31. Additionally, the employee bears the burden to show that a proposed accommodation is reasonable. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 (7th Cir. 2013). Thus, an employee who has disability-related difficulties with driving but "chooses to drive to

12

work" although public transportation is available, Charter Br. 36, may be unable to show the proposed accommodation is reasonable. Nor must an employer provide the specific "accommodation [an employee] requests or prefers," *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996), as long as the accommodation provided is reasonable. An employer would not, as Charter speculates, be required to "immediately adjust [an employee's] hours or transfer the employee to a different location," Charter Br. 36, but would instead be free to grant an alternative reasonable accommodation. Moreover—although Charter's hypotheticals are silent as to any potential burden —an employer would have no obligation to provide an accommodation that imposed undue hardship. 42 U.S.C. § 12112(b)(5)(A). Charter's proposed bar on accommodations addressing barriers outside the workplace should thus be rejected.

### B. Charter fails to explain why this Court should not revisit *Brumfield* pursuant to Circuit Rule 40(e).

EEOC asserted that this Court should revisit *Brumfield* if necessary to sustain the accommodation claim here because that decision is contrary to the ADA's text, EEOC regulations, this Court's precedent, and the consensus view of other circuits. EEOC Br. 22-33. Charter fails to persuasively rebut this argument.

Charter first argues that EEOC waived reliance on Circuit Rule 40(e) by not arguing below that *Brumfield* was wrongly decided. Charter Br. 40. But such an argument would have made no sense before a district court powerless to overrule circuit precedent. Moreover, the authority Charter relies on to establish waiver merely held that a failure to raise a "specific theory" below waived that argument for appeal. *United States v. Ritz*, 721 F.3d 825, 827-28 (7th Cir. 2013). Here, EEOC argued extensively below that the ADA's accommodation mandate extends beyond essential job functions. R.36 at 14-19, R.50 at 3-7.

Next, Charter asserts that Congress's reference to "otherwise" qualified individuals, 42 U.S.C. § 12112(b)(5)(A), intends to exclude those who can perform essential job functions without

13

an accommodation. Charter Br. 41. Charter offers no response to EEOC's argument that the ADA's other provisions signal a clear intent to protect from discrimination even those who can perform essential job functions without accommodation and to address broader goals beyond performance of specific job duties. EEOC Br. 22-24. Instead, Charter focuses narrowly on the word "otherwise," claiming that its reading is necessary to avoid making that term superfluous. Charter Br. 41. But EEOC already addressed this argument, explaining that Congress used the term "otherwise" to remove doubt that an employer might have to accommodate an individual who patently lacked the minimum qualifications for a job. EEOC Br. 26-27.

Charter ignores this common-sense reading, insisting that Congress intended to exclude *sub silentio* a large swath of disabled individuals from the ADA's reasonable accommodation protections. In support of this claim, Charter misreads portions of the ADA's legislative history and EEOC interpretive guidance, which in fact *support* the notion that "otherwise qualified" refers to meeting a position's basic qualification standards. Charter Br. 42-43; *see* H.R. Rep. No. 101-485, pt. 2 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 330, 347 (equating "otherwise qualified" with "meet[ing] all of an employer's job-related selection criteria"); 29 C.F.R. pt. 1630, app. § 1630.9 (equating "otherwise qualified" with satisfying a position's "skill, experience, education and other job-related selection criteria"). These authorities simply suggest that the "otherwise qualified" individual will need an accommodation for *some reason* and that one common—but not exclusive—reason is to meet certain job criteria, 1990 U.S.C.C.A.N. at 347, or "perform the job's essential functions," 29 C.F.R. pt. 1630, app. § 1630.9.[5]

---

[5] Charter makes the same conceptual error by relying on legislative history passages that refer to accommodations that address "problems" with or "barriers to job performance," 1990 U.S.C.C.A.N. at 348, or allow the employee to "perform the essential functions of a job," *id.* at 339; *see* Charter Br. 38-39, 42-43. These authorities simply suggest that *one* purpose of an accommodation is to allow for performance of essential job functions.

Charter thus fails to establish that its interpretation of "otherwise" is the best interpretation, much less that it is the *sole* possible interpretation, such that the statute is unambiguous. Because that term is at least ambiguous, EEOC's regulation at 29 C.F.R. § 1630.2(o)(1) requiring accommodations for purposes beyond essential job functions is entitled to deference. As EEOC explained, multiple courts have explicitly agreed with this regulation. EEOC Br. 29.

Nor does Charter offer a persuasive response to EEOC's argument that *Brumfield* conflicts with this Court's precedent. EEOC Br. 29-30. Charter dismisses as dicta this Court's statement in *Filar* that disabled employees remain eligible for an accommodation even when they "can 'perform the essential functions' of . . . [the] position . . . 'without reasonable accommodation.'" 526 F.3d at 1067 (quoting 42 U.S.C. § 12111(8)). Whether characterized as dicta or a holding, *Filar*'s reasoning stands in direct opposition to *Brumfield*'s by adopting a contrary interpretation of the statutory text and offering a considered rejection of the notion that employees are ineligible for accommodations when they can perform essential job functions without them. 526 F.3d at 1067. And *Brumfield* did not reason that *Filar* constituted non-binding dicta; instead, it did not acknowledge the decision at all. With respect to *Fedro v. Reno*, 21 F.3d 1391, 1395-96 (7th Cir. 1994), and *McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir. 1992), Charter does not dispute EEOC's point that these decisions conflict with *Brumfield* by clarifying that the Rehabilitation Act requires accommodations for purposes other than essential job functions, EEOC Br. 30; instead, Charter cites aspects of these decisions that are irrelevant to this point.[6] Charter Br. 46, 50.

Charter also fails to offer any persuasive response to the numerous decisions from other circuits that contravene *Brumfield*. EEOC Br. 30-31 (citing six decisions from five circuits). Charter

---

[6] Charter claims that this Court's decision in *Rauen v. U.S. Tobacco Manufacturing Ltd. Partnership*, 319 F.3d 891 (7th Cir. 2003), establishes that the essential-job-function issue was an open question prior to *Brumfield*. Charter Br. 48 n.13. But *Rauen* predated *Filar*, and *Filar* "answered that question" prior to *Brumfield*. Charter Br. 48 n.13.

tries to distinguish *Hill v. Associates for Renewal in Education, Inc.*, 897 F.3d 232 (D.C. Cir. 2018), by

noting that the employee experienced pain when performing essential job functions. Charter Br. 45.

This is correct, but it merely underscores the point: the D.C. Circuit found the employee eligible for

an accommodation—to relieve pain—*despite his ability to perform essential job functions without it.* 897 F.3d

at 239. Charter also argues without explanation that "[i]mplicit" in *Bell v. O'Reilly Auto Enterprises,*

*LLC*, 972 F.3d 21 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 2755 (2021), is the notion that an

"accommodation must facilitate the employee's ability to perform the job's essential functions."

Charter Br. 44-45. But the *explicit* holding of *Bell* is that an employee who can "perform the essential

functions of his job without accommodation remains eligible" to receive one. 972 F.3d at 24. Finally,

Charter claims that the Eleventh Circuit joined *Brumfield*'s outlier position in *D'Onofrio v. Costco*

*Wholesale Corp.*, 964 F.3d 1014 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1435 (2021). Charter Br. 43-44.

But the stray statement from *D'Onofrio* that Charter highlights does not amount to a holding because

the issue was irrelevant, 964 F.3d at 1031-32 (holding that employer reasonably accommodated deaf

employee who needed accommodation to perform job), and the consensus view among district

courts in that circuit is to the contrary, *see Adams v. Crestwood Med. Ctr.*, 504 F. Supp. 3d 1263, 1303

(N.D. Ala. 2020) (collecting cases).[7]

    Charter next argues that even if *Brumfield* is an outlier, that is an insufficient basis for

invoking Circuit Rule 40(e). Charter Br. 44. But Charter elsewhere emphasizes that one "important

---

[7] Unable to effectively rebut these decisions from other circuits, Charter next attacks "[o]ther cases the EEOC highlights," claiming they do not directly contravene *Brumfield.* Charter Br. 44-46. But that is unsurprising because EEOC cited those cases for other propositions. *See, e.g.*, EEOC Br. 26-27 (relying on *Johnson v. Bd. of Trs.*, 666 F.3d 561 (9th Cir. 2011), and *Bay v. Cassens Transp. Co.*, 212 F.3d 969 (7th Cir. 2000), for proposition that courts have equated the term "otherwise qualified" with meeting basic prerequisites); EEOC Br. 27-28 (citing *Whitaker v. Wis. Dep't of Health Servs.*, 849 F.3d 681 (7th Cir. 2017), *Watson v. Lithonia Lighting*, 304 F.3d 749 (7th Cir. 2002), *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281 (7th Cir. 1996), and *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249 (11th Cir. 2001), for proposition that courts have interpreted terms "otherwise qualified" and "qualified" as functionally equivalent).

purpose[]" underlying Circuit Rule 40(e) is to overrule "earlier decisions whose soundness has been undermined by . . . consensus among our sister circuits." Charter Br. 40 (citation omitted). And this Court's precedent emphasizes that being "out-of-step with the outcomes reached in the vast majority of cases" in other circuits is a compelling ground for invocation of Rule 40(e). EEOC Br. 31; *Owens v. United States*, 387 F.3d 607, 610-11 (7th Cir. 2004) (finding "compelling grounds" for overruling prior decision where "[i]n the eight years since it was rendered, no case has followed it; it stands completely alone").

Charter next argues that Kimmons would be ineligible for an accommodation even if this Court "narrowly construes" *Brumfield* and confines its holding to accommodations pertaining to essential job functions. Charter Br. 49-50. This is because Kimmons' accommodation, in Charter's view, serves no other purposes beyond performance of essential job functions, such as equal enjoyment of benefits and privileges of employment. Charter Br. 49 (citing 29 C.F.R. pt. 1630, app. § 1630.2(o)). But narrowly construing *Brumfield* would not mean that "only the [benefits and privileges] category" of accommodations "remains." Charter Br. 49. Instead, a narrow construction of *Brumfield* would recognize that accommodations that facilitate safe access to the workplace are relevant to performance of essential job functions. This reading would properly recognize Kimmons' accommodation as one pertaining to essential job functions, rather than requiring his accommodation to serve a separate purpose. And, even if some other purpose were required, Kimmons' accommodation serves to make work facilities "readily accessible," 42 U.S.C. § 12111(9)(A), by addressing disability-related barriers to accessing the workplace. *See Filar*, 526 F.3d at 1067 (suggesting that accommodation could be viewed through lens of § 12111(9)(A) where it addressed fact that "walking long distances from the bus stop ma[de] it difficult [for plaintiff] to access certain schools"); *Feist v. La. Dep't of Just.*, 730 F.3d 450, 453 (5th Cir. 2013) (plaintiff's

"requested reserved on-site parking would presumably have made her workplace 'readily accessible to and usable' by her" within meaning of § 12111(9)(A)).

### III.   Kimmons' requested accommodations were not unreasonable as a matter of law.

#### A.   Commute-related accommodations are not categorically unreasonable.

Charter next repackages its proposed bar on commute-related accommodations by arguing that such accommodations are "objectively unreasonable." Charter Br. 51. This argument lacks merit for the reasons stated above, *supra* at 9-13, and because this Court has recognized that the reasonableness of a requested accommodation "is a highly fact-specific inquiry" that "requires balancing the needs of the parties," negating any categorical approach.[8] *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 968 (7th Cir. 2020) (citation omitted); *see EEOC v. Wal-Mart Stores, Inc.*, --F.4th--, 2022 WL 2353026, at *4 (7th Cir. 2022) ("We have only deemed an accommodation per se unreasonable when the accommodation itself creates an inability to do the job's essential tasks." (internal quotation marks and citation omitted)). And the district court, which never addressed the reasonableness of Kimmons' accommodation, should be given the opportunity to do so first on remand.

#### B.   A jury could find Kimmons' shift-change request reasonable.

Charter contends that Kimmons' shift-change request was unreasonable because it would not have completely eliminated his need to drive in the dark. Charter Br. 53. But Charter's own witness agreed that a shift that "changed . . . each season" would have allowed Kimmons to avoid driving in the dark. R.30-4 at 115:16-23. And Charter does not dispute that the 30-day shift-accommodation extension Kimmons actually requested would have allowed him to avoid night

---

[8] Charter cites *Rauen* for the proposition that ability to perform essential job functions without accommodation weighs against an accommodation's reasonableness. Charter Br. 52. But this again ignores the link between Kimmons' accommodation and his ability to reach the workplace to perform essential job functions. *Supra* at 7-9. And *Rauen*'s reasonableness determination rested largely on the view that a request to "work[] at home is rarely a reasonable accommodation," 319 F.3d at 896, which is not the issue here.

driving during that time period. Instead, Charter speculates that an extension would have been futile, but this ignores the relief from night driving Kimmons would have enjoyed for at least a month and turns on a counter-factual question of where Kimmons would have chosen to live had his request been granted. Charter Br. 54.

Moreover, a shift change would have allowed Kimmons to avoid night driving by permitting access to public transportation. Contrary to Charter's argument, Charter Br. 54-55, a jury could conclude that such public transportation existed. Kimmons' testimony suggests that the Coach bus system offered transportation from Milwaukee to Racine, but not after 9:00 p.m. R.30-5 at 124:19-21. Charter faults Kimmons for failing to recite the precise bus schedule, but this hardly establishes such transportation did not exist.[9] Charter Br. 55. Nor does Davis' testimony that she was "not aware" of whether public transportation runs from Milwaukee to Racine establish that there was none. R.30-68 at 93:19-21.

Even if a shift change would not have *entirely* eliminated the need to drive at night, an accommodation need not provide "a perfect cure" to be reasonable. *Stewart v. Cnty. of Brown*, 86 F.3d 107, 112 (7th Cir. 1996); *see Livingston*, 388 F. App'x at 739, 741 (modified work schedule that would "*minimize* driving after dark" was reasonable accommodation (emphasis added)). Nor must "an employee's initial request . . . identify the perfect accommodation from the start." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 564 (6th Cir. 2022) (citation omitted). Instead, "the employer must engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 963 (7th Cir. 2014) (citation omitted). Charter failed to do that. R.34-16 at 2-3 (denying Kimmons'

---

[9] Kimmons' testimony that "I think there's a bus that runs at something," R.30-5 at 76:21-22, appears more imprecise than it likely was, given an apparent stenographer error omitting the time Kimmons stated, as the page also omits times in one of counsel's questions. *See* R.30-5 at 76:8-10 (referencing "the [sic] to 5:00 shift" and "the [sic] to 9:00 shift").

extension request hours after receipt; offering no alternatives beyond suggesting he manage his own transportation); *see Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000) ("United flunked its obligations under the ADA. In the face of Gile's repeated pleas for a shift transfer, United refused her request for a modest accommodation, then did nothing to engage with Gile in determining alternative accommodations . . . .").

**C. Transfer was not unreasonable as a matter of law.**

Charter next asserts it had no obligation to transfer Kimmons because doing so "would violate [Charter's] legitimate, nondiscriminatory policy" prohibiting transfers after certain discipline. Charter Br. 56. But *EEOC v. United Airlines, Inc.*, 693 F.3d 760 (7th Cir. 2012), held that "[m]erely following a 'neutral rule' d[oes] not allow [an employer] to claim an 'automatic exemption' from the accommodation requirement of the Act." *Id.* at 763 (quoting *US Airways, Inc. v. Barnett*, 535 U.S. 391, 398 (2002)).[10]

Finally, Charter contends that the five positions Kimmons applied for would not have "resolv[ed] [his] . . . commute-related issues." Charter Br. 56. But Kimmons testified that he confirmed during an interview that one such position was in Kenosha with hours no later than 6:00 p.m., thus minimizing any night driving. R.30-5 at 165:8-21, 166:7-8. With respect to the other positions, there is a factual dispute as to their location and whether they required evening hours. Charter notes that on two applications Kimmons indicated he could work evening hours, Charter Br. 14, 57 (citing R.37 ¶ 93), but the job postings do not specify any such requirement, R.43-2 at Exs. N-1, N-4. And while Charter submits those two positions were in the Milwaukee area, R.43-2 ¶ 3, the job postings do not specify any location, R.43-2 at Exs. N-1, N-4, and Kimmons testified he believed they were in the Kenosha/Racine area. R.30-5 at 152:22-153:9, 160:16-161:1. Nor does

---

[10] Charter does not argue that deviating from its transfer policy would violate a seniority system or impose undue hardship. *Barnett*, 535 U.S. at 402-03. Nor does Charter argue that Kimmons' disciplinary infractions rendered him unqualified for the relevant positions. R.45 at 15.

Kimmons' email noting no openings in Kenosha or Racine *in August 2016* contradict his testimony, *cf.* Charter Br. 57 (citing R.30-22 at 4), given that Kimmons applied for the relevant positions between *September 2016 and January 2017*. R.43-2 ¶ 3.

## CONCLUSION

For the foregoing reasons, the judgment should be reversed.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
   *Acting General Counsel*

JENNIFER S. GOLDSTEIN
   *Associate General Counsel*

ANNE NOEL OCCHIALINO
   *Acting Assistant General Counsel*

/s/ Chelsea C. Sharon
CHELSEA C. SHARON
   *Attorney, Appellate Litigation Services*
   *Office of General Counsel*
   *Equal Employment Opportunity*
    *Commission*
   *131 M St. NE, Fifth Floor*
   *Washington, DC 20507*
   *(202) 921-2889*
   *chelsea.sharon@eeoc.gov*

July 6, 2022

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and Seventh Circuit Rule 32(c) because it contains 6,996 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Seventh Circuit Rule 32(b) because it was prepared using Microsoft Word for Office 365 ProPlus in Garamond, a proportionally spaced typeface, in 12-point font in the body of the brief and 11-point font in the footnotes.

/s/ Chelsea C. Sharon
CHELSEA C. SHARON

**CERTIFICATE OF SERVICE**

On July 6, 2022, I filed the foregoing brief with the Clerk of the Court by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Chelsea C. Sharon
CHELSEA C. SHARON